BODETT
v.
LEES.

</div>

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

### BRITTON BENNETT v. J. H. WHEELER.

The Board of Underwriters in New Orleans being a body composed of private individuals, without being incorporated, and through their treasurer having received on deposit money to which the plaintiff was entitled, it was *held:* that a suit to recover the money could be maintained against the treasurer in his individual capacity.

APPEAL from the Fifth District Court of New Orleans, *Augustin*, J. *T. W. Collens*, for plaintiff. *M. M. Cohen*, for defendant and appellant.

MERRICK, C. J. The defendant acts as the secretary and the treasurer of the Board of Underwriters in this city. He is also a member of such board as well as secretrary of the Home Mutual Insurance Company. The objects of the formation of the Board of Underwriters is stated by the president, who was examined as a witness in this case, to be, "To establish uniform rates of premium; that uniform policies may be issued; that uniform usages and customs of the port may be established; for the establishment of agents at home and abroad; to control generally the underwriting of New Orleans; to receive salvage money by consent, and to distribute it."

The plaintiff having the sum of $932 50 in the hands of *C. P. Bennett*, his brother, deposited it with *Messrs. Cleveland, Brothers & Co.* of this city.

It appears that the plaintiff had been second clerk on the steamboat T. P. Leathers, and had obtained this money, or the principal part, by salvage of cotton thrown overboard at Tompkins' Bend in 1854, to save the T. P. Leathers from sinking. The plaintiff was discharged at the time of the accident, it seems, to enable him to remain and save the cotton and claim salvage: the steamboat, which was barely able to keep afloat, having proceeded to New Orleans for repairs.

*C. P. Bennett* was the captain and owner or part owner of the T. P. Leathers, and had a claim for insurance against the Home and Sun Mutual Insurance offices. Being informed that the insurance companies would not settle with him unless the money was paid over, he directed *Cleveland, Brothers & Co.* to pay over this money to the defendant. They, without doubting *C. P. Bennett's* authority to direct the payment, complied with the request.

Under the direction of the president of the Board of Underwriters, or some other member of the same, the defendant gave the following receipt, viz:

<div align="right">NEW ORLEANS, December 4th, 1854.</div>

"Received of *Messrs. Cleveland, Brothers & Co.*, nine hundred and thirty-two dollars and fifty cents.

$932 50.

<div align="center">[ Signed ]        JAMES H. WHEELER,<br>
*Secretary of the Board of Underwriters of New Orleans.*"</div>

The defendant, as the treasurer of the Board of underwriters, it appears, has the money still in his possession. The present action is brought against him

individually, to recover back the sum of money deposited with him by *Messrs. Cleveland, Brothers & Co.* (as plaintiff alleges) without authority.

We understood the defendant's counsel in his oral argument to waive the question, whether the plaintiff could, after his alleged discharge as clerk, claim salvage on the cotton saved by him. The money, it is clearly shown, was deposited with *Cleveland, Brothers & Co.* by the *plaintiff.* Now, in a controversy between the plaintiff and the defendant, or the Board of Underwriters, for this sum of money, it is difficult to perceive by what argument they can successfully contest the right of the plaintiff to the fund. If it should turn out that the plaintiff is bound to refund any portion of the money to any other person, as improperly received by him, it would be no answer to such demand, that plaintiff's agents had improperly deposited it with the Board of Underwriters, who refuse to surrender the same. Plaintiff would in such case be bound to answer for the conduct of his agents.

The question then which presents the only real difficulty, as we conceive, is whether the suit can be maintained against the defendant in his individual capacity? Were the Board of Underwriters an incorporated company, and the defendant only acting as the secretary and treasurer of such incorporated company it is most clear, that the action could not be maintained in its present form. And it is possible that if the Board of Underwriters had in this transaction considered themselves as the mere agents of the Home and Sun Mutual Insurance Companies, and placed this sum of money to their credit, that the action could not have been maintained without a demand first made upon those companies and without making them parties to the suit.

But, as the case now stands, we find the Board of Underwriters to be a body composed of private individuals, who undertake to act as *quasi* agents for the benefit of several insurance companies in matters principally commercial. We do not understand their acts to be binding upon the companies except so far as special power is granted, or their acts are ratified. They appear to maintain a separate organization, having a distinct treasury, and are maintained by voluntary assessment upon the companies for which they assume to act. In the instance before us they have departed from their usual line of duties, and received a sum of money from a third person on deposit: for it is not pretended, that the Board of Underwriters themselves have any claim to this fund.

The president of the board, who is also president of the Cresent Mutual Insurance Company, says, that "He does not set up any claim to this money, nor does the office he represents." Did the Home and Sun Mutual Insurance companies conceive that they had any valid claim they would doubtless have intervened in these proceedings.

In regard to all business transacted by the Board of Underwriters in which they do not assume to act as agents, and which have not the express sanction of the respective insurance companies recognizing them as their agents, and particularly in the receipt of this sum of money, in which their agency is not apparent, they must be considered as partners. Whether they are to be considered as commercial partners, and bound *in solido* as such, or not, we do not think it important further to inquire: for if it be conceded, that the other partners have equally with the defendant received the irregular deposit, Art. No. 2928, C. C., binds *each* of them to restore the same.

The fact, therefore, that the defendant acted as secretary and treasurer as

well as a member of the Board of Underwriters, cannot relieve him from responsibility. If he be not responsible as secretary and treasurer, he is responsible as a member of the board; and, being treasurer, he will not find it difficult to free himself from liability by restoring the money, which he has in possession, to him who appears to be the legal owner.

Judgment affirmed.